**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Ed Rizzo as Trustee of Local 786 Building Material Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago and as Trustee of Local 786 Building Material Pension Fund | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| BTD Paving | ) ) |
| Defendant. | ) ) |

DOCKETED
APR 1 4 2000

00C 2269

Judge
Mag. Judge

JUDGE LEINENWEBER

MAGISTRATE JUDGE BOBRICK

FILED-ED4
00 APR 13 PM 9:22
U.S. DISTRICT COURT

## COMPLAINT

Plaintiff, Ed Rizzo, as Trustee of Local 786 Building Material Chauffeurs, Teamsters & Helpers Welfare Fund and as Trustee of Local 786 Building Material Pension Fund, referred to as the "Funds", by his attorney, Jeffrey W. Hoff, complains against the defendant, BTD Paving and in support thereof states as follows:

1. Jurisdiction and venue are based upon Section 502(a), (e) and (f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 USC 1132(a), (e) and (f), as more fully appears herein.

2. Welfare Fund and Pension Fund are multi employer employee benefit plans within the meaning of Section 3(3) and (37) of ERISA, 29 USC 1002(3) and (37), and maintains its principal place of operation at 300 S. Ashland, Chicago, Illinois, located in the Northern District of Illinois.

3. Plaintiff, Ed Rizzo, is a Trustee of the Welfare Fund and a Trustee of the Pension Fund; is a fiduciary within the meaning of Section 3(21) of ERISA, 29 USC 1002(21); and has been authorized by the Trustees of the Welfare Fund and the Pension Fund to bring this action on behalf of the Fund.

4. BTD Paving maintains its principal place of business within this judicial district and is an employer within the meaning of Section 3(5) of ERISA, 29 USC 1002(5).

5. Local 786 Building Material, Lumber, Box, Shaving, Roofing and Insulating Chauffeurs, Teamsters, Warehousemen and Helpers, and related Industry Employees, Watchmen and Security Guards Union ("Local 786"), is an employee organization within the meaning of Section 3(4) of ERISA, 29 USC 1002(4).

6. BTD Paving and Local 786 are parties to a Collective Bargaining Agreement effective April 1, 1995 through May 31, 2000 ("Agreement"). A true copy of the Agreement is attached hereto as Exhibit 1.

7. Pursuant to Article 9 and Article 10 of the Agreement, BTD Paving is required to make timely contributions to the Welfare Fund and the Pension Fund on behalf of the employees represented by Local Union 786.

8. Notwithstanding the obligations described in paragraph 7, BTD Paving has failed to pay the Welfare Fund contributions owing for the period June, 1999 through February, 2000 in the approximate amount of $17,608.50 thereby depriving the Welfare Fund of contributions and income and jeopardizing the benefits of participants and beneficiaries, and violating Section 515 of ERISA, 29 USC 1145.

9. Notwithstanding the obligations described in paragraph 7, BTD Paving has failed to pay the Pension Fund contributions owing for the period of June, 1999 through February, 2000 in the approximate amount of $9,181.58 thereby depriving the Pension Fund of contributions and income and jeopardizing the benefits of participants and beneficiaries, and violating Section 515 of ERISA, 29 USC 1145.

10. That as a result of an audit performed on October 15, 1997 contributions were found due and owing and delinquent to the Local 786 Welfare Fund. As a result of a Repayment Agreement signed by both parties January 15, 1998 the amount of $662.96 remains outstanding. A true copy of the Repayment Agreement is attached hereto as Exhibit 2.

11. That as a result of an audit performed on October 15, 1997 contributions were found due and owing and delinquent to the Local 786 Pension Fund. As a result of a Repayment Agreement signed by both parties January 15, 1998 the amount of $225.11 remains outstanding. A true copy of the Repayment agreement is attached hereto as Exhibit 2.

12. Pursuant to Section 502(g) (2) of ERISA, 29 USC 1132(g) (2), BTD Paving is indebted to the Welfare Fund in addition to the sums found due and owing as

delinquent contributions, for double interest thereon, attorney's fees, costs, and other legal or equitable relief as this court deems appropriate.

WHEREFORE, plaintiff Trustee respectfully requests that this court issue an order against BTD Paving granting the following relief:

A. A judgment on behalf of plaintiff Trustee for such amounts as may be determined to be due and owing from BTD Paving to the Welfare Fund and to the Pension Fund to date, and for such amounts as become due during the pendency of this proceeding;

B. A judgment on behalf of plaintiff Trustee for double interest on the amount of delinquent contributions, reasonable attorney fees, and the cost of this action;

C. An Order that this court will retain jurisdiction of this cause pending compliance with its orders; and

D. For such further and additional relief as may be necessary.

Jeffrey W. Hoff, In-House Counsel

Jeffrey W. Hoff
300 S. Ashland/Ste. 500
Chicago, IL 60607
312 666-1875
28402

Dated: 4/13/0

## BTD PAVING
### DELINQUENCY CALCULATION
### PENSION FUND

| Members | Month | Weeks | Rate | Beg Total | Cumul. | 0.015 Interest | Cumul. | Total |
|---------|-------|-------|------|-----------|--------|----------------|--------|-------|
| | | | | | | | | |
| 3 | Jun-99 | 4 | $ 73.00 | $ 876.00 | $ 876.00 | $ 13.14 | $ 13.14 | |
| 3 | Jul-99 | 5 | $ 73.00 | $1,095.00 | $ 1,971.00 | $ 29.57 | $ 42.71 | |
| 3 | Aug-99 | 4 | $ 73.00 | $ 876.00 | $ 2,847.00 | $ 42.71 | $ 85.41 | |
| 3 | Sep-99 | 4 | $ 73.00 | $ 876.00 | $ 3,723.00 | $ 55.85 | $ 141.26 | |
| 3 | Oct-99 | 5 | $ 73.00 | $1,095.00 | $ 4,818.00 | $ 72.27 | $ 213.53 | |
| 3 | Nov-99 | 4 | $ 73.00 | $ 876.00 | $ 5,694.00 | $ 85.41 | $ 298.94 | |
| 3 | Dec-99 | 4 | $ 73.00 | $ 876.00 | $ 6,570.00 | $ 98.55 | $ 397.49 | |
| 3 | Jan-00 | 5 | $ 73.00 | $1,095.00 | $ 7,665.00 | $ 114.98 | $ 512.46 | |
| 3 | Feb-00 | 4 | $ 73.00 | $ 876.00 | $ 8,541.00 | $ 128.12 | $ 640.58 | $ 9,181.58 |
| | | | | | | | | |
| | | | | | | | | |

## BTD PAVING
## DELINQUENCY CALCULATION
## WELFARE FUND

| Members | Month | Weeks | Rate | Beg Total | Cumul. | 0.015 Interest | Cumul. | Total |
|---------|-------|-------|------|-----------|--------|---------|--------|-------|
| 3 | Jun-99 | 4 | $ 140.00 | $1,680.00 | $ 1,680.00 | $ 25.20 | $ 25.20 | |
| 3 | Jul-99 | 5 | $ 140.00 | $2,100.00 | $ 3,780.00 | $ 56.70 | $ 81.90 | |
| 3 | Aug-99 | 4 | $ 140.00 | $1,680.00 | $ 5,460.00 | $ 81.90 | $ 163.80 | |
| 3 | Sep-99 | 4 | $ 140.00 | $1,680.00 | $ 7,140.00 | $ 107.10 | $ 270.90 | |
| 3 | Oct-99 | 5 | $ 140.00 | $2,100.00 | $ 9,240.00 | $ 138.60 | $ 409.50 | |
| 3 | Nov-99 | 4 | $ 140.00 | $1,680.00 | $10,920.00 | $ 163.80 | $ 573.30 | |
| 3 | Dec-99 | 4 | $ 140.00 | $1,680.00 | $12,600.00 | $ 189.00 | $ 762.30 | |
| 3 | Jan-00 | 5 | $ 140.00 | $2,100.00 | $14,700.00 | $ 220.50 | $ 982.80 | |
| 3 | Feb-00 | 4 | $ 140.00 | $1,680.00 | $16,380.00 | $ 245.70 | $ 1,228.50 | $ 17,608.50 |

## REPAYMENT AGREEMENT

### Between

### LOCAL UNION 786 HEALTH & WELFARE AND PENSION FUNDS

### and

### B.T.D. PAVING CONSTRUCTION COMPANY

### PARTIES

Local Union 786 Health & Welfare and Pension Funds (Funds) and B. T. D. Paving Construction Company (Employer).

WHEREAS the Employer is obligated to make contributions to the Welfare Fund and the Pension Fund by a valid Collective Bargaining Agreement;

WHEREAS as determined by an audit performed by Thomas Havey LLP on October 15, 1997 contributions were found due and owing and delinquent to the Local 786 Welfare Fund in the amount of $5,966.00 and to the Local 786 Pension Fund in the amount of $4,052.00;

WHEREAS the Employer acknowledges that the above amounts are true and correct and are owed pursuant to the contract;

In consideration of forbearance from litigation of Funds and as a result of the terms herein, it is hereby agreed as follows:

1. B. T. D. Paving Construction Company shall remit to the Local 786 Welfare Fund the amount of $331.44 in eighteen (18) monthly installments beginning January 15, 1998 and continuing through June 15, 1999 with the final payment being in the amount of $331.52

2. B. T. D. Paving Construction Company shall remit to the Local 786 Pension Fund the amount of $225.11 in eighteen (18) monthly installments beginning January 15, 1998 and continuing through June 15, 1999 with the final payment being in the amount of $225.13.

3. The Employer agrees to remit all current contributions as required by the contract in a timely fashion.

4. All payments to be delivered to the Local 786 Fund Office located at 300 S. Ashland Ave., Fifth Floor, Chicago, IL 60607. The Employer agrees that, in the event it fails to timely make any scheduled payment upon due notice of no more than five days, the Fund Office may file an action and seek judgment for all amounts remaining due and the Employer shall consent to entry of the judgment.

Hereby agreed this _15 TH_ day of _JANUARY 1998_, 1998.

_Lawrence Ornelas_
Employer

## AREA CONSTRUCTION AGREEMENT

## UNIONS I. B. OF T. JOINT COUNCIL NO. 25

THIS AGREEMENT entered into this 1st day of April, 1995, by and between the Mid-America Regional Bargaining Association (hereinafter called MARBA) for and on behalf of itself, its member associations and their members who have assigned bargaining rights to their Association, and any Employer signatory to this Agreement both present and future or _BTD PAVING CONSTRUCTION COMPANY_ (hereinafter called Employer or Employers), and Local Union No. 786 affiliated with the International Brotherhood of Teamsters, AFL-CIO, (hereinafter called the Union). This Agreement shall be known as Unions I. B. of T. JOINT COUNCIL NO. 25, AREA CONSTRUCTION AGREEMENT.

### WITNESSETH

1.      The purpose of this Agreement is (a) to enter into a definite labor management contract covering the wages, hours, conditions of work and terms of employment in the relationship between Employer and employee; (b) to prevent strikes, lockouts and work stoppages; (c) to adopt suitable measures for the peaceful settlement of grievances and differences; (d) to secure to members of the Association or other Employer sufficient capable employees; (e) to protect the economic and employment welfare of employees.

2.      It is mutually understood and agreed that the following terms relating to the wages, hours and working conditions of workmen covered by this Agreement have been decided upon by means of collective bargaining, and that the following provisions will be binding upon the parties to this Agreement during the terms of this Agreement and any renewal period thereof.

### ARTICLE 1
### RECOGNITION AND SCOPE OF AGREEMENT

1.1      RECOGNITION. Employer recognizes the Unions as the sole and exclusive bargaining agent with respect to rates of pay, hours of work and all other conditions of employment for all employees covered by this Agreement.

1.2      BARGAINING UNIT. Employees covered by this Agreement are all employees in the classifications of work covered by this Agreement, employed by the Employers in the contract territory and engaged in the work described in Section 1.4 hereof.

1.3      WORK COVERED. Jurisdiction. This Agreement shall apply to employees in the classifications herein set forth in the performance of work involved in the following operations:

1.3-14    Construction, slag and sludge hauling or any other trucking in or out of steel mills.

1.3-15    Hauling of salt.

1.3-16    Asphalt plant in areas where it has been past practice.

1.3-17    The hauling recycled broken concrete and recycled asphalt.

1.3-18    Concrete Pumper Trucks.

1.3-19    Concrete Crushing Plants.

1.4       The work listed in 1.4 above is listed for the purpose of describing work customarily and/or traditionally performed by the employees covered by this Agreement and for no other purpose.

## ARTICLE 2
## UNION SECURITY

2.1       MAINTENANCE OF MEMBERSHIP.  Present employees who are members of the Union must, as a condition of employment, maintain such membership during the term of this Agreement to the maximum extent permitted under law.

2.2       NEW EMPLOYEES.  New employees shall, as a condition of employment, become members of the Union to the maximum extent permitted under law, on the eighth day after the beginning of employment or after the execution date of this Agreement, whichever is later, and shall maintain such membership as a condition of continued employment.

2.3       ENFORCEMENT.  Any employee who refuses or fails to fulfill the obligations of Sections 2.1 or 2.2, above, shall forfeit his right of employment; and the Employer shall discharge such employee within three working days of receiving written notice from the Union of the failure of an employee to fulfill said obligations; provided, that the Union shall hold the Employer harmless for demands under this Section not in accord with federal law.

2.4       ADDITIONAL EMPLOYEES. When the Employer needs additional employees he shall give the Local Union equal opportunity with all sources to provide suitable applicants, but shall not be required to hire those referred by the Union.  The names and addresses of all new employees shall be furnished to the office of the Union not later than the first pay period after their hiring.

liable for any delinquency by such subcontractor in the payment of any wages, fringes, benefits or contributions provided herein except as provided hereinafter.

If thereafter any subcontractor shall become delinquent in the payment or meeting of the obligations set forth above, the Union shall promptly give written notice thereof to the Employer and Subcontractor specifying the nature and amount of such delinquency. More than one such notice may be given with respect to delinquencies. If such notice is given, the Employer shall withhold the amount claimed to be delinquent out of any sums due and owing by the Employer to such Subcontractor and shall pay and satisfy therefrom the amount of such delinquency by such Subcontractor as follows:

If such Subcontractor does not dispute the existence or amount of such delinquency, the Employer shall forthwith pay the amount of such delinquencies to the person or Fund entitled thereto. Any dispute as to the existence or amount of such delinquency shall be settled by the Union and Subcontractor as provided in Article 6 hereof and the Employer shall pay to the person or Funds entitled thereto the amount of such delinquency as so determined and costs incurred.

The Employer shall not be liable for any such delinquency occurring more than 60 days prior to the receipt of such written notice from the Union.

3.5     Notwithstanding any other provision of this Agreement, any and all disputes involving this Article 3 shall be resolved exclusively through the grievance and arbitration provisions of Article 6 of this Agreement.

ARTICLE 4
PRE-JOB CONFERENCE

4.1     Before commencing any job, an Employer shall meet with the Union for a pre-job conference for the purpose of advising the Union of the Employer's requirements as to the number of employees, the probable starting date, duration of the job, working schedules and other matters affecting employees. This shall not apply to an Employer permanently domiciled within the area of the Local Union's jurisdiction. All contractors, including all local contractors, shall provide a list of subcontractors and owner-driver or drivers to the Local Union three days prior to commencement of work.

4.2     When a project is within the territory of more than one Local Union, the determination of the division of employees for representation purposes shall be made by an agreement between the Local Union and the Employer, or Employers involved. In the event the Local Unions and the Employer, or the Employers, are unable to reach such an agreement, the issue shall be referred within five

-5-

permanent Joint Area Committee consisting of an equal number of members representing the Employers and the Union, but no less than three from each group. Alternates may also be appointed. The Joint Area Committee shall, at its first meeting, formulate rules of procedure to govern the conduct of its proceedings.

6.7     It shall be the function of the Joint Area Committee to resolve disputes or grievances which cannot be settled under Article 6.3.

6.8

6.8-1     No Employer shall sit on a panel of the Joint Area Committee which is hearing or considering a grievance or dispute arising from his own operations.

6.8-2     No Local Union shall sit on a panel of the Joint Area Committee which is hearing or considering a grievance or dispute arising from a job over which such Local Union has geographical jurisdiction.

6.9     When the Joint Area Committee, by a majority vote, decides a dispute or grievance, such decision shall be final and binding on all parties.

6.10     When the Joint Area Committee is unable to decide a dispute or grievance, it may be submitted, at the option of the moving party within 30 days, to an arbitrator jointly selected by the Committee from a panel of five potential arbitrators provided by the American Arbitration Association and/or the Mediation and Conciliation Service. Each party shall alternately strike names from the list, the moving party striking first until one arbitrator remains. The decision of the arbitrator shall be final and binding upon all parties.

6.11     The expense of the arbitrator shall be jointly paid by the Employer and the Local Union between whom the grievance or dispute exists.

6.12     The arbitrator shall have no authority to add to, detract from, or in any way alter the provisions of this Agreement.

ARTICLE 7
JURISDICTIONAL DISPUTE

7.1     In the event of a jurisdictional dispute between the Unions party to this Agreement and another labor organization who is party to a collective bargaining agreement with the Employer, the Employer or the Union shall request such Unions or labor organizations involved to send representatives to a mutually agreed location to meet to settle the dispute.

-7-

```
        Group 4 - 6 axle trucks              $ 21.675
        Group 5 - An additional $.20 per axle shall be paid for
                  vehicles with more than six axles.
```

**There shall be an increase in wages and/or fringe benefits (Health & Welfare and Pension Fund) according to the following schedule. Allocation of these amounts between wages and/or fringe benefit funds shall be determined by the Local Union 30 days prior to the effective date of the increase:

```
        Effective April 1, 1996              $ .70 per hour
        Effective April 1, 1997              $ .75 per hour
        Effective April 1, 1998              $ .80 per hour
        Effective April 1, 1999              $ .90 per hour
```

8.3        The classifications listed in this Section shall be paid on the following basis:

GROUP 1

- Frame Truck (when used for transportation purposes)
- Air Compressors and Welding Machines, including those pulled by cars, pickup trucks and tractors
- Ambulances
- Articulated Dumps
- Batch Gate Lockers
- Batch Hopperman
- Car and Truck Washers
- Carry Alls
- Fork Lift and Hoisters
- Helpers
- Mechanic Helpers and Greasers
- Oil Distributors, two-man operation
- Pavement Breakers
- Pole Trailer, up to forty feet
- Pothole Repair Trucks
- Power Mower Tractors
- Quick Change Barrier
- Self-Propelled Chip Spreader
- Shipping and Receiving Clerks and Checkers
- Skipman
- Slurry Trucks, two-man operation
- Slurry Trucks, Conveyor Operated - two or three man operation
- Teamsters
- Truck Drivers hauling warning lights, barricades, and portable toilets on the job site
- Unskilled Dumpmen
- Warehousemen and Dockmen

GROUP 2

- Dispatcher

8.4     Drivers operating different types and sizes of equipment on the same day which they operate for two hours or more shall be paid the rate governing the highest rated equipment operated for the entire day.

8.5     The Association or Employer or employee agrees to notify the Union Representative when using new types of equipment not formerly used by his company.  The Negotiating Committee of the Employers and the Unions shall meet to immediately negotiate the wage scale for same.  The agreed rate shall be retroactive to the equipment's first day of use.

8.6     An employee's pay shall start at whatever time the employee reports for work as instructed by the Employer, or as provided for in Article 12.3 and shall not stop until his truck is through work, including filling with gasoline and oil, if requested by the Employer.

8.7     All employees shall be paid weekly and no more than five days shall be withheld.  Employee's pay check to be ready for him not later than quitting time on designated pay day.

8.8     The Employer shall list on each employee's check stub the amount of straight-time hours and the amount of overtime hours as well as all deductions from the check.

8.9     An employee who was injured on the job and is sent home or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his regular straight time shift on that day.  An employee who has returned to his regular duties after sustaining a compensable injury who is required by the Employer's doctor to receive additional medical treatment during his regularly scheduled working hours shall receive his regular hourly rate of pay for the straight-time hours lost from work.

8.10    It is agreed that no individual ready-mix trucks are to be operated other than those that are company-owned or operated.

## ARTICLE 9
### HEALTH & WELFARE

9.1     Effective May 1, 1995**, the Employer shall contribute and pay to the Building Material Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago, the sum of $116.00 per week for each employee covered by this Agreement who appears on the payroll at least two calendar days in any calendar week, regardless of the number of hours worked, beginning with the first such week of employment.

**There shall be an increase in wages and/or fringe benefits (Health & Welfare Fund and Pension Fund) according to the following

Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as it may be amended from time to time; and further, agrees to be bound by all action taken by said Employer Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

9.6     A calendar week is Sunday through Saturday.

ARTICLE 10
PENSION FUND

10.1     Effective May 1, 1995**, the Employer shall contribute to the Local Union 786 Building Material Pension Fund the sum of $63.00 per week per employee who appears on the payroll at least two days in any calendar week, regardless of the number of hours worked; provided the employee has been on the Employer's payroll at least 30 days.

**There shall be an increase in wages and/or fringe benefits (Health & Welfare and Pension Fund) according to the following schedule.  Allocation of these amounts between wages and/or fringe benefit funds shall be determined by the Local Union 30 days prior to the effective date of the increase:

| | |
|---|---|
| Effective April 1, 1996 | $ .70 per hour |
| Effective April 1, 1997 | $ .75 per hour |
| Effective April 1, 1998 | $ .80 per hour |
| Effective April 1, 1999 | $ .90 per hour |

Contributions shall also be made for the weeks of paid vacation, but not if the employee's vacation time occurs during a period of layoff, leave of absence or illness.  The contributions for each employee shall not exceed 52 weeks in any calendar year.

10.2     The Pension program shall be administered by four Trustees appointed by the Northern Illinois Ready Mix and Material Association and four Trustees appointed by the Union, who shall jointly administer the Pension Fund as provided in the Trust Agreement and any and all other agreements to be jointly executed by the parties thereto, all of which shall be in accordance with the provisions of the Labor-Management Relations Act of 1947 and shall qualify under the appropriate provisions of the Internal Revenue Code of 1948, as amended, so as to insure that the Employer contributions thereto will be deductible as ordinary business expenses for income tax purposes.

10.3     The Trust Agreement and Pension Agreement jointly entered into and executed shall be considered as part of this Agreement.

10.4     Employer hereby agrees to be bound by the Agreement and Declaration of Trust creating said Pension Fund and by any future amendments thereto, other than that the Trustees shall have no

-13-

hourly rate for all work performed on a second shift and employees starting to work between 10:00 P.M. and 1:00 A.M. shall receive $.50 per hour in addition to their straight-time hourly rate for third shift.

12.4     On any building project of five million dollars or more, the following shall apply:

Double time shall be paid for all time worked over eight hours in any one day.  Double time shall be paid for all time worked over 40 hours in any one week, Monday through Friday.  Double time shall be paid for all work done on Saturday.  This shall apply only to the geographic jurisdiction of Local 179.

12.5     If an employee is ordered to start work by his Employer, Monday through Friday, he shall not receive less than eight hours straight-time pay.  If he starts work on Saturday, Sunday and Holidays, he shall not receive less than four hours pay at the applicable hourly rate.

12.6     All Sunday work shall be double time.

12.7     One-half hour meal period will fall between the fourth and the end of the fifth hour on all shifts.

12.8     Employers who require a Teamster employee to be out-of-town and stay overnight, shall reimburse the employee for expenses in a reasonable and customary manner, upon proof of receipt.

ARTICLE 13
GENERAL CONDITIONS

13.1     SENIORITY

13.2     Seniority, as the term is used herein, means the length of continuous service of any regular employee from the date of first employment by the Employer as hereinafter provided.

13.3     New employees shall be regarded as probationary employees until they have acquired seniority rights.  Probationary employees shall attain seniority rights when they have been actually at work in the employ of the Employer for a total of 30 worked days, or 60 calendar days, whichever comes first.  There shall be no responsibility for the re-employment of probationary employees if they are laid-off or discharged prior to attaining seniority rights.  After 30 worked days or 60 calendar days, whichever comes first, of employment as above defined, the names of such employees shall be placed on a seniority list as provided in Section 13.3 with a service credit of 30 days, reverting back to the first day of hire.  The Union shall receive a seniority list upon request.

Any employee covered by this Agreement who accepts a

-15-

such employee shall stay at said job site until its completion or until employee is laid-off.

Notwithstanding the foregoing, the Employer may permit a transfer immediately upon the layoff without waiting two days.

All employees domiciled at the same location will be assigned to work according to their seniority, providing they are qualified.  This will not affect the daily starting time.

13.11    When hauling blacktop or similar material, drivers shall have a platform to stand on to roll their tarps at the plant.

13.12    Employee who is required to work through his meal period and does work through his meal period shall be paid the straight-time hourly rate for such time worked.

13.13    If the employee is directed to take a truck to a job site or a garage and leave it at same, he shall be compensated until he returns to his original start.

13.14    Shift seniority shall prevail on selection of shifts in truck shop providing the mechanics have equal qualifications.

13.15    Employee when told to park on a job site, the Employer shall with all possible means have the employee living nearest to the job site report for work there, if qualified.

ARTICLE 14
LABOR WORK

14.1    Chauffeurs are exempt from all labor work except when necessary to clean their truck body or to maintain the safety of their vehicles in the event of an emergency or breakdown. Chauffeurs may be required to act as flagman upon request by the Employer.  Chauffeurs shall operate one vehicle only unless said vehicle is replaced with another.  Chauffeurs shall maintain their trucks at the job site for loading until quitting time.  Supply and service truck drivers shall load and unload their vehicles, except where doing so will infringe on the work of other trades or where the equipment or material to be loaded or unloaded is unreasonably heavy and help is needed, it will be supplied.

14.2    DUMP MAN.  A Dump Man shall be employed when there are two or more pieces of equipment covered by this Agreement engaged in the hauling and dumping of dirt, blacktop, road gravel and other solid filling material.  This paragraph shall only apply in areas where and when it has been a past area practice.

14.3    The Employer shall equip all trucks and tractors with workable heaters and defrosters.

-17-

17.1-3    He must work the scheduled work day before and after the holiday, unless excused from so working because of illness or death in the immediate family.

17.2    If a qualified employee works on any of the above listed holidays, he shall be paid double time for all hours worked with a guarantee of eight hours of work or its equivalent in pay in addition to the applicable above holiday pay at the employee's appropriate wage rate.

17.3    If a paid holiday falls within an employee's vacation period, he shall receive his vacation pay plus eight hours' pay at straight-time for the holiday, or by agreement with his Employer prior to taking his vacation, an extra day's vacation with pay in lieu of the holiday pay.  If any of the above listed holidays falls on a Saturday, it shall nevertheless be a paid holiday under this Article.

ARTICLE 18
VACATIONS

18.1    Any employee having worked 900 straight-time hours or more in any one anniversary year for the same Employer shall be entitled to one week vacation with pay.  In computing straight-time hours of such an employee who has so worked, no more than 40 straight-time hours shall be credited in any one week.  Where an employee has been injured in the course of his employment with such Employer and he shall have worked at least 750 straight-time hours during the anniversary year in which the injury occurred, for the purpose of computing the required 900 straight-time hours, he shall be credited with such straight-time hours he would have worked had he not been injured, but in no event shall he be credited for vacation purposes only, with more than 40 straight-time hours in any one week or more than 250 straight-time hours in the anniversary year.  It is understood and agreed that no straight time hours shall be credited beyond the anniversary year.

18.2    Any employee who shall have worked for the same Employer at least 900 straight-time hours in each of the two preceding consecutive years, shall be entitled to a two week vacation with pay.  In computing the 900 straight-time hours in this paragraph referred to, of an injured employee, the employee shall have actually worked 750 or more straight-time hours, but shall be credited for vacation purposes only, with such additional straight-time hours he would have worked in the anniversary year had he not been injured.  In no event shall such injured employee be credited with more than 40 straight-time hours in any one week.

18.3    Any employee who shall have worked for the same Employer at least 900 straight-time hours in each of the 10 preceding consecutive years, shall be entitled to a three week vacation with pay.  In computing the 900 straight-time hours in this paragraph

-19-

for wages and equipment shall be issued by the Contractor to such owner-drivers, and the Contractor shall maintain proper books and records for inspection by the Union to determine the Contractor's compliance with the provisions of this Agreement including the specific provisions of this Article. The books and records (including payroll records, time cards, owner-driver operating expenses, etc.), shall be produced at the Union headquarters upon reasonable notice.

19.2    Detailed statements shall be furnished by the Contractor to such owner-drivers at least once a month designating all such owner-drivers income and expenses for the month. Any money due at this time must be paid.

19.3    Each Employer will identify each and every such owner-driver to the Union regardless of whether or not the vehicle is licensed in the name of the driver or the lessee.

19.4    The Employer reserves the right to control the manner, means and details of and by which such owner-driver performs his services, as well as the ends to be accomplished.

19.5    Such owner-driver shall receive the full wages, supplemental allowances, and all working conditions provided in this Agreement, and shall receive as a minimum salary after payment of all direct and indirect vehicle operating expenses, a sum equal to the wage and benefit amounts he would have received for the equivalent time worked on that date as an hourly rated driver. If the Contractor does not provide satisfactory evidence that an owner-driver is paid as provided under this Article, the Contractor shall upon three working days notice, discontinue use of such owner-driver.

19.6    Such owner-driver shall have complete freedom to purchase gasoline, oil, grease, tires, tubes, etc., including repair work, at any place where efficient service and satisfactory products can be obtained at the most favorable prices.

19.7    The Employer agrees not to enter into any agreement or contract with such owner-driver, either individually or collectively, which in any way conflicts with any of the terms or provisions of this Article. Any such agreement shall be null and void.

19.8    In no event shall such owner-drivers' wages be paid on a percentage basis.

19.9    Nothing in this Article shall be construed or interpreted to require any contractor to contribute to any fringe benefit fund for the hours worked by an owner-driver.

-21-

to impose discipline, including discharge, in the event the steward has taken unauthorized strike action, slow-down, or work stoppage in violation of this Agreement and any action taken by the Employer shall not be subject to the grievance and arbitration procedure.

21.3    A job steward shall be a competent working Teamster.

21.4    A steward shall not leave the job during working hours unless authorized by the Employer.

## ARTICLE 22
## PROTECTION OF RIGHTS

22.1    It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute, or refuses to go through or work behind any lawful primary picket line, including the lawful primary picket line of Unions party to this Agreement, and including lawful primary picket lines at the Employer's places of business. In the application of this Article it is immaterial if the labor dispute or picketing is illegal if the labor dispute or picketing is primary.

22.2    This Article in its entirety is excluded from the application of the grievance procedure of this Agreement.

## ARTICLE 23
## SEPARATE AGREEMENTS

It is agreed that the Employer or the employee and the Union will not be asked to make any written or verbal agreement which may conflict with this Agreement.

## ARTICLE 24
## COMPLIANCE WITH SAFETY AND TRAFFIC LAWS

No employee shall be responsible for the purchase or display of City or State License tags or plates. Overloading of trucks shall be the responsibility of the Employer unless it is due to employee's negligence. If any employee is arrested or is issued a summons because of faulty equipment, failure to display tags or licenses, overloading or overweight, he shall not be required to surrender his chauffeur's license in lieu of bond, and if he is thereby to appear in Court on behalf of his Employer, he shall be reimbursed for his lost time at his regular straight-time hourly rate of pay unless it is due to employee's negligence.

bankruptcy proceedings, or operation of law, or taken over or absorbed by a parent company or subsidiary company or subsidiary corporation, such business or operation shall continue to be subject to and covered by the terms and conditions of this Agreement for the life thereof. The Employer shall not use any leasing device to evade this Agreement. Nothing in this Agreement shall limit or restrict the right of an Employer to cease its business or operations.

28.2      In the event an Employer buys out the business or operations of another Employer and operates it as a separate legal entity, then the seniority of the employees shall continue on the same basis as it existed prior to the occurrence of said buy-out.

28.3      In the event an Employer buys out another Employer covered by this Agreement and merges operations of the bought-out Employer into his own, the seniority of the employees shall be established as follows:

   28.3-1      In the event the acquiring Employer has bought out or merged with another solvent Employer who is covered by this Agreement, the seniority of the employees of both Employers shall be merged within their seniority units in accordance with their dates of hire with their respective Employers, to the extent of the acquiring Employer's need as to qualifications and number of employees. This provision shall apply only as to merged operations within the same Local Union's jurisdiction.

   28.3-2      In the event the bought-out Employer is insolvent, the employees of such Employer who are retained shall be placed at the bottom of the seniority list as a group listed in accordance with their previous seniority standing. The acquiring Employer need retain such employees of the bought-out Employer only to the extent of his need as to qualifications and number.

ARTICLE 29
CONFORMITY TO LAW - SAVING CLAUSE

29.1      If any provision or the enforcement or performance of any provision of this Agreement is or shall at any time be contrary to law, then such provision shall not be applicable or enforced or performed, except to the extent permitted by law. If at any time thereafter such provision or its enforcement or performance shall no longer conflict with the law, then it shall be deemed restored in full force and effect as if it had never been in conflict with the law.

29.2      If any provision of this Agreement or the application of such provision to any person or circumstances shall be held invalid, the remainder of this Agreement or the application of such

County Contractors Development Association (LCCDA) and Underground Contractors Association (UCA) represented by Mid-America Regional Bargaining Association (MARBA), their collective bargaining representative and Joint Council No. 25 of the Teamsters, as follows:

1)   The parties agree to exchange contract proposals at least 90 days prior to the expiration date of the contract.

2)   The parties agree to meet on a regular basis (to be determined) at least 30 days before expiration.

3)   After the expiration date, and for 30 days following, the parties will meet Mondays, Wednesdays and Fridays for a designated period of time (to be determined) until an agreement is reached.

4)   Any time after expiration date an agreement is reached, it shall be retroactive back to the day after expiration.

5)   If after 30 days from expiration no agreement is reached, the Union retains the right to strike.

## FOR NON-ASSOCIATION EMPLOYERS

The above Agreement, excluding all provisions in reference to Mid-America Regional Bargaining Association, or any Association, is hereby adopted in its entirety, this _4th_ day of ___June___, 1996, by and between _____ _BTD PAVING CONSTRUCTION Co._ to be referred to in the above Agreement as "EMPLOYER" and the BUILDING MATERIAL, BOX, LUMBER, SHAVING, ROOFING AND INSULATING CHAUFFEURS, TEAMSTERS, WAREHOUSEMEN AND HELPERS, AND RELATED INDUSTRY EMPLOYEES, WATCHMEN AND SECURITY GUARDS UNION LOCAL No. 786, OF CHICAGO AND VICINITY, ILLINOIS, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, to be referred to in the above Agreement as the "UNION".

FOR THE EMPLOYER:


_B.T.D. PAVING CONSTRUCTION CO._     _3057 S. THROOP ST. CHICAGO, IL 60608_
Name of Company                                     Address, City, Zip Code

_Francisco Canelas President_
Signature & Title

FOR THE:
BUILDING MATERIAL, BOX, LUMBER, SHAVING, ROOFING AND INSULATING CHAUFFEURS, TEAMSTERS, WAREHOUSEMEN AND HELPERS, AND RELATED INDUSTRY EMPLOYEES, WATCHMEN AND SECURITY GUARDS UNION LOCAL No. 786, OF CHICAGO AND VICINITY, ILLINOIS, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America


_____     _6-4-96_
President                                  Date

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as require
by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the u
of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**00C 2269**

## I. (a) PLAINTIFFS
Ed Rizzo as Trustee of Local 786
Building Material Chauffeurs, Teamsters
& Helpers Welfare Fund and as Trustee
of the Local 786 Building Material
Pension Fund

**DEFENDANTS**
BTD Paving Const. Co.
3057 S. Throop
Chicago, IL 60608

DOCKETE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Coo APR 1 4 20
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jeffrey W. Hoff, In House Counsel
Local Union 786
300 S. Ashland/Rm. 500
Chicago, IL 60607 (312)666-1875

ATTORNEYS (IF KNOWN)
JUDGE LEINENWEBER

MAGISTRATE JUDGE BOBRICK

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTI
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

ERISA, 29 USC 132 - Failure to remit contributions

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 4/13/00    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

JUDGE LEINENWEBER

DOCKETED
APR 14 2000



**In the Matter of**

Ed Rizzo, Etc., et al.
      Plaintiffs,
    v.
BTD Paving Const. Co.
      Defendant.

**MAGISTRATE JUDGE BOBRICK**

Case Number:

**00C 2269**

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Ed Rizzo as Trustee of Local 786 Building Material Chauffeurs, Teamsters & Helpers Welfare Fund and as Trustee of Local 786 Building Material Pension Fund, Plaintiffs

| (A) | (B) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** Jeffrey W. Hoff | **NAME** |
| **FIRM** In-House Counsel | **FIRM** |
| **STREET ADDRESS** 300 S. Ashland / Ste. 500 | **STREET ADDRESS** |
| **CITY/STATE/ZIP** Chicago, IL 60607 | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** (312) 666-1875 | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 28402 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☒ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |
| **(C)** | **(D)** |
| **SIGNATURE** | **SIGNATURE** |
| **NAME** | **NAME** |
| **FIRM** | **FIRM** |
| **STREET ADDRESS** | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**